

2006 MAY -2 AM 9: 21

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

THE PROCTER & GAMBLE
COMPANY.

        Plaintiff,

v.

PERCARA ENTERPRISES INC..

        Defendant.

Case No. **1:06CV1070**

Judge **JUDGE OLIVER**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff The Procter & Gamble Company ("P&G"). for its Complaint against defendant Percara Enterprises Inc. ("Percara"). alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      P&G is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

2.      Defendant Percara is a Canadian corporation with its principal place of business in Burlington, Ontario.

3.      This is a civil action arising from defendant's misuse of P&G's trademarks and trade dress. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and the Ohio Deceptive Trade Practices Act, Ohio Rev. Stat. Ann. § 4165.02.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over claims under Ohio law. In addition, because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of a state and a citizen of another country, this Court also has jurisdiction under 28 U.S.C. § 1332.

5.      This Court has personal jurisdiction over defendant by virtue of its commission of tortious acts within the state of Ohio and this District and its transaction of business within the state of Ohio and this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

6.      Established in 1837, P&G began as a small, family-operated soap and candle company in Cincinnati, Ohio. Today, P&G markets over 300 products to more than five billion consumers, and the P&G community consists of more than 140,000 employees working in over 80 countries worldwide.

7.      P&G is one of the largest and most highly regarded manufacturers and sellers of consumer goods in the United States, with a long history of selling high quality products. P&G's product line includes a wide array of products that are purchased by hundreds of millions of American consumers each year.

8.      P&G manufactures and markets a variety of personal care products. P&G devotes substantial effort, time, and resources to designing its packaging and graphics for such products. Packaging and graphics are important elements in marketing such products, because they serve both to distinguish P&G's products from others and to represent and convey a product's quality and value to consumers.

9.      Defendant also markets a variety of personal care products.  Rather than developing its product line through its own marketing and creative efforts, however, defendant bases a substantial component of its business on imitations of P&G's products.  Defendant sells a number of its products in packaging that copies most or all of the key elements of P&G's packaging so as to convey an overall impression of the same product or of a product coming from the same source.  Defendant has violated P&G's trademark and trade dress rights on a range of personal care products, using trademarks and trade dress so as to cause a likelihood of confusion among consumers and the trade.

10.     Defendant's actions in selling its imitative products have been deliberate, willful, and intentional, conducted with the intent of trading on the good will and reputation of P&G.

11.     Defendant's unlawful actions are having and will continue to have a substantial and adverse effect on interstate commerce.

## Defendant's HERBAL EXTRACTS FRUIT EXPLOSIONS Imitations of P&G's HERBAL ESSENCES FRUIT FUSIONS Personal Care Products

12.     In November 2001, P&G's subsidiary Procter & Gamble Hair Care, LLC acquired Clairol, Inc., including the HERBAL ESSENCES brand of hair care products and all intellectual property and good will associated with the products.  P&G has marketed a variety of personal care products under the trademark HERBAL ESSENCES, including hair care products and body washes.  HERBAL ESSENCES products are widely distributed and available in all leading channels of trade for personal care products, including supermarkets, pharmacies, and mass merchandise stores.

3

13.   P&G owns:

a.   U.S. Trademark Registration No. 2,038,053 for the HERBAL ESSENCES trademark, for use in connection with hair shampoo and conditioner. That registration is valid, subsisting, and incontestable.

b.   U.S. Trademark Registration No. 2,498,741 for the HERBAL ESSENCES trademark, for use in connection with hair coloring preparations, namely, hair dyes and hair tints. That registration is valid, subsisting, and incontestable.

c.   U.S. Trademark Registration No. 2,195,831 for the HERBAL ESSENCES trademark, for use in connection with body wash. That registration is valid, subsisting, and incontestable.

d.   U.S. Trademark Registration No. 2,195,829 for the HERBAL ESSENCES trademark, for use in connection with hair styling mousse, hair styling gel, hair spray gel, and hair spray. That registration is valid, subsisting, and incontestable.

14.   P&G's HERBAL ESSENCES trademark is an inherently distinctive and famous mark symbolizing strong consumer good will.

15.   In 2002, P&G introduced a line of HERBAL ESSENCES products under the trademark HERBAL ESSENCES FRUIT FUSIONS. P&G owns:

a.   U.S. Trademark Registration No. 2,761,914 for the FRUIT FUSIONS trademark, for use in connection with skin care preparations, namely, body wash. That registration is valid, subsisting, and enforceable.

b.   U.S. Trademark Registration No. 2,784,672 for the FRUIT FUSIONS trademark, for use in connection with hair care preparations, namely, shampoos, conditioners, detanglers and styling gels. That registration is valid, subsisting and enforceable.

16.     The HERBAL ESSENCES FRUIT FUSIONS trademark is also an inherently distinctive and famous mark symbolizing strong consumer good will.

17.     P&G sells its HERBAL ESSENCES FRUIT FUSIONS shampoos, conditioners, and body washes in two basic varieties of distinctive trade dress.  Body washes and shampoos are sold in trade dress that consists, among other distinctive elements, of:  (a) a clear bottle allowing the pastel-colored contents to show through; (b) a dark green cap; (c) an image of fruit (corresponding to one of the fruits in the product blend) printed on the back of the bottle so as to be visible through the bottle; (d) a bottle with sloping shoulders; (e) the product family brand name with the first word HERBAL and the second word printed in the same typeface on the front label; (e) a specific product brand name printed just below, with the first word FRUIT in white block capital letters, and a second word in white stylized lower-case script; (f) a medallion consisting of a white inner section, a dark green outer section, a thin white border, and a second thin border corresponding to the color of the bottle, with pictures of fruit (corresponding to the fruits in the product blend); (g) the fruits contained in the product blend listed on the bottom half of the front label in white lettering; (h) the generic product type (such as "Protecting Shampoo") written in white letters with initial capital letters and the remaining letters in lower-case; and (i) a description of product performance or ingredients in a rectangular bar outline.  HERBAL ESSENCES FRUIT FUSIONS conditioners are sold in the same distinctive packaging, except that the bottles are opaque pastel bottles preventing any fruit image from showing through the bottle.

18.     The listed combination of features serves the purpose of identifying and distinguishing the HERBAL ESSENCES FRUIT FUSIONS line of personal care products from the products of other sellers.

19.     P&G has sold millions of units of its HERBAL ESSENCES FRUIT FUSIONS line of personal care products. It has devoted millions of dollars to advertising and promotion of those products, including print and television marketing efforts.

20.     As a result of the extensive sales and marketing of products packaged in the HERBAL ESSENCES FRUIT FUSIONS trade dress, consumers associate such trade dress with P&G and view that trade dress as designating the source of P&G's HERBAL ESSENCES FRUIT FUSIONS line of products. The HERBAL ESSENCES FRUIT FUSIONS trade dress is an inherently distinctive and famous symbol of strong consumer good will.

21.     Fully aware of P&G's HERBAL ESSENCES. FRUIT FUSIONS, and HERBAL ESSENCES FRUIT FUSIONS trademarks and trade dress and associated good will. defendant has distributed, offered for sale, and/or sold in the United States a directly competitive line of shampoos, conditioners, and foot lotions under the confusingly similar designation HERBAL EXTRACTS FRUIT EXPLOSIONS, along with the elements of the HERBAL ESSENCES FRUIT FUSIONS trade dress described above, without authorization and in a manner designed to confuse consumers. A true and correct depiction of defendant's imitative HERBAL EXTRACTS FRUIT EXPLOSIONS products is attached hereto as Exhibit A.

**Defendant's LADIES SCENT Imitations of P&G's SECRET Personal Care Products**

22.     Since 1956, P&G has marketed a line of deodorants under the trademark SECRET. SECRET deodorants are widely distributed and available in all leading channels of trade for personal care products, including supermarkets, pharmacies, and mass merchandise stores.

6

23.     P&G is the owner of U.S. Trademark Registration No. 2,832,031 for a four-petal design trademark, for use in connection with anti-perspirants and deodorants. That trademark is valid, subsisting, and enforceable.

24.     P&G sells its SECRET products in a distinctive trade dress that consists, among other distinctive elements, of: (a) dominant pink and blue colors, including a blue cap: (b) a pink four-petal design element; and (c) a pink rectangle with a sloping top on the bottom portion of the label with the description "Powder Fresh."

25.     The listed combination of features serves the purpose of identifying and distinguishing SECRET personal care products from the products of other sellers.

26.     P&G has sold hundreds of millions of units of its SECRET products. It has devoted millions of dollars to advertising and promotion of its SECRET products, including print and television marketing efforts.

27.     As a result of the extensive sales and marketing of products packaged in the SECRET trade dress, consumers associate such trade dress with P&G, and view that trade dress as designating the source of P&G's SECRET products. The SECRET trade dress is an inherently distinctive and famous symbol of strong consumer good will.

28.     Fully aware of P&G's SECRET trademarks and trade dress and associated good will, defendant has distributed, offered for sale, and/or sold in the United States a directly competitive deodorant under the designation LADIES SCENT, along with the four-petal design mark and elements of the SECRET trade dress described above, without authorization and in a manner designed to confuse consumers. A true and correct depiction of defendant's imitative LADIES SCENT product is attached hereto as Exhibit B.

7

**Defendant's RED LINE Imitations of P&G's RED ZONE Personal Care Products**

29.     Since February 2001, P&G has marketed a line of deodorants and anti-perspirants under the trademark Old Spice® RED ZONE. P&G's RED ZONE deodorants are widely distributed and available in all leading channels of trade for personal care products, including supermarkets, pharmacies, and mass merchandise stores.

30.     P&G sells its RED ZONE products in a distinctive trade dress that consists, among other distinctive elements, of: (a) dominant use of the color red, including a red cap; (b) the product family brand name printed in white lettering; (c) the specific product brand name printed just below, with both words in slightly slanted, block, all-capital letters written in reflective silver against a black background; (d) a red rectangular bar embedded within the specific product brand name; (e) white/silver streaks emanating from the sides of the specific product name; (f) a logo with a nautical theme; (g) the word "deodorant" printed in black lettering just below the specific product brand name; and (h) a blue box at the bottom of the product label with a description of the product scent.

31.     The listed combination of features serves the purpose of identifying and distinguishing RED ZONE personal care products from the products of other sellers.

32.     P&G has sold hundreds of millions of units of its RED ZONE products. It has devoted millions of dollars to advertising and promotion of its RED ZONE products, including print and television marketing efforts.

33.     As a result of the extensive sales and marketing of products packaged in the RED ZONE trade dress, consumers associate such trade dress with P&G, and view that trade dress as designating the source of P&G's RED ZONE products. The RED ZONE trade dress is an inherently distinctive and famous symbol of strong consumer good will.

34.     Fully aware of P&G's RED ZONE trade dress and associated good will, defendant has distributed, offered for sale, and/or sold in the United States a directly competitive deodorant under the designation RED LINE, along with all of the design elements of the RED ZONE trade dress described above, without authorization and in a manner designed to confuse consumers. A true and correct depiction of defendant's imitative RED LINE product is attached hereto as Exhibit C.

**Defendant's Imitation of P&G's HIGH ENDURANCE Personal Care Products**

35.     Since January 1994, P&G has marketed a line of deodorants and anti-perspirants under the trademark Old Spice® HIGH ENDURANCE. P&G's HIGH ENDURANCE deodorants are widely distributed and available in all leading channels of trade for personal care products, including supermarkets, pharmacies, and mass merchandise stores.

36.     P&G sells its HIGH ENDURANCE products in a distinctive trade dress that consists, among other distinctive elements, of: (a) a clear bottle that allows the clear deodorant product to show through; (b) the brand name on the front label in white capital letters, with silver and black background shading; (c) red rectangular blocks on the front label; (d) a smaller blue rectangular block with a white outline containing white lettering; (e) a logo with a nautical theme.

37.     The listed combination of features served the purpose of identifying and distinguishing Old Spice® HIGH ENDURANCE personal care products from the products of other sellers.

38.     P&G has sold millions of units of its HIGH ENDURANCE products. It has devoted substantial sums to advertising and promotion of its HIGH ENDURANCE products, including print and television marketing efforts.

39.     As a result of the extensive sales and marketing of products packaged in the HIGH ENDURANCE trade dress consumers associate such trade dress with P&G, and view that trade dress as designating the source of P&G's HIGH ENDURANCE products. The HIGH ENDURANCE trade dress is an inherently distinctive and famous symbol of strong consumer good will.

40.     Fully aware of P&G's HIGH ENDURANCE trade dress and associated good will, defendant has distributed, offered for sale, and/or sold in the United States a directly competitive deodorant under the designation ULTIMATE PROTECTION, along with all of the design elements of the HIGH ENDURANCE trade dress described above, without authorization and in a manner designed to confuse consumers. A true and correct depiction of defendant's imitative ULTIMATE PROTECTION product is attached hereto as Exhibit D.

**Defendant's Imitations of P&G's PANTENE Personal Care Products**

41.     Since around 1959, P&G and its predecessors have marketed a line of hair care products under the trademark PANTENE. PANTENE products are widely distributed and available in all leading channels of trade for personal care products, including supermarkets, pharmacies, and mass merchandise stores.

42.     P&G sells its PANTENE products in distinctive packaging that consists, among other distinctive elements, of: (a) a white pearlescent bottle with an oval flat-topped dispenser cap; (b) use of the additional colors black, silver, and blue; and (c) the product brand name printed in white capital letters on a black rectangular bar; (d) the use of a background square design placed behind the black product brand name bar, which features a four-quadrant design; and (e) a blue color rectangle at the base of the product, beneath the product description and just above the unit volume disclosure.

43.     The listed combination of features serves the purpose of identifying and distinguishing PANTENE personal care products from the products of other sellers.

44.     P&G has sold hundreds of millions of units of its PANTENE products. It has devoted millions of dollars to advertising and promotion of those products, including print and television marketing efforts.

45.     As a result of the extensive sales and marketing of products packaged in the PANTENE trade dress, consumers associate such trade dress with P&G and view that trade dress as designating the source of P&G's PANTENE line of products. The PANTENE trade dress is also an inherently distinctive and famous symbol of strong consumer good will.

46.     Fully aware of P&G's PANTENE trademarks and trade dress and associated good will, defendant has distributed, offered for sale, and/or sold in the United States a directly competitive shampoo under the confusingly similar trade dress, along with the elements of the PANTENE trade dress described above, without authorization and in a manner designed to confuse consumers. A true and correct depiction of defendant's imitative product is attached hereto as Exhibit E.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement
### Lanham Act § 32, 15 U.S.C. § 1114

47.     P&G restates and realleges paragraphs 1 through 46.

48.     P&G is the owner of the registered trademarks HERBAL ESSENCES and FRUIT FUSIONS.

49.     Defendant's use of the HERBAL EXTRACTS FRUIT EXPLOSIONS trademark and variations thereof is likely to cause confusion, or to cause mistake or to deceive, and it constitutes trademark infringement under the Lanham Act § 32, 15 U.S.C. § 1114.

11

50.     P&G is the owner of the registered trademark for its four-petal design used with its SECRET products.

51.     Defendant's use of the four-petal design element is likely to cause confusion, or to cause mistake or to deceive, and it constitutes trademark infringement under the Lanham Act § 32, 15 U.S.C. § 1114.

52.     Defendant's infringement has caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined.

53.     Defendant's unlawful actions are profiting and will continue to profit it. Defendant's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition (Trademarks)
### Lanham Act § 43(a), 15 U.S.C. § 1125(a)

54.     P&G restates and realleges paragraphs 1 through 53.

55.     P&G is the owner of common law rights in the trademarks HERBAL ESSENCES, FRUIT FUSIONS, and HERBAL ESSENCES FRUIT FUSIONS.

56.     Defendant's use of the HERBAL EXTRACTS FRUIT EXPLOSIONS trademark and variations thereof is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

57.     P&G is the owner of common law rights in the four-petal design trademark used with its SECRET products.

12

58.    Defendant's use of the four-petal design element is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

59.    Defendant's actions have caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined.

60.    Defendant's unlawful actions are profiting and will continue to profit it. Defendant's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

### THIRD CLAIM FOR RELIEF

**Federal Unfair Competition (Trade Dress)
Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

61.    P&G restates and realleges paragraphs 1 through 60.

62.    P&G is the owner of trade dress rights in the packaging of its HERBAL ESSENCES FRUIT FUSIONS product line.

63.    Defendant's use of P&G's HERBAL ESSENCES FRUIT FUSIONS trade dress on its HERBAL EXTRACTS FRUIT EXPLOSIONS product line is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

64.    P&G is the owner of trade dress rights in the packaging of its SECRET product line.

13

65.    Defendant's use of P&G's SECRET trade dress on its LADIES SCENT product line is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

66.    P&G is the owner of trade dress rights in the packaging of its RED ZONE product line.

67.    Defendant's use of P&G's RED ZONE trade dress on its RED LINE product line is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

68.    P&G is the owner of trade dress rights in the packaging of its HIGH ENDURANCE product line.

69.    Defendant's use of P&G's HIGH ENDURANCE trade dress on its ULTIMATE PROTECTION product line is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

70. P&G is the owner of trade dress rights in the packaging of its PANTENE product line.

71. Defendant's use of P&G's PANTENE trade dress on its PERCARA hair care product line is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of defendant with P&G, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by P&G. Such actions constitute unfair competition, false designation of origin, and palming off in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

72. Defendant's actions have caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined.

73. Defendant's unlawful actions are profiting and will continue to profit it. Defendant's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

### FOURTH CLAIM FOR RELIEF

#### Violation of Ohio Deceptive Trade Practices Act

74. P&G restates and realleges paragraphs 1 through 73.

75. Defendant's actions in Ohio constitute willful and knowing deceptive trade practices in violation of Ohio Rev. Stat. § 4165.02(A)(2),(3).

76. Defendant's actions in Ohio have caused, and will continue to cause, irreparable harm to P&G unless permanently enjoined.

77. Defendant's unlawful actions in Ohio are profiting and will continue to profit it. Defendant's actions are causing and will cause P&G monetary damage in amounts presently unknown but to be determined at trial.

78.     Defendant has willfully engaged in the deceptive trade practices described above, knowing its actions to be deceptive.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff The Procter & Gamble Company requests that the Court enter judgment:

(a)     In favor of plaintiff and against defendant on all plaintiff's claims;

(b)     Preliminarily and permanently enjoining and restraining defendant, its officers, agents, subsidiaries, servants, partners, employees, attorneys and all others in active concert or participation with it, from the manufacture, distribution, offering for sale, sale, advertising and/or promotion in the United States of:

(i)     personal care products bearing the designation HERBAL EXTRACTS, FRUIT EXPLOSIONS, or any other designation that is confusingly similar to P&G's HERBAL ESSENCES and FRUIT FUSIONS trademarks, or any trade dress that is confusingly similar to P&G's HERBAL ESSENCES FRUIT FUSIONS trade dress;

(ii)     personal care products bearing a four-petal design, or any other designation that is confusingly similar to P&G's four-petal design trademark, or any trade dress that is confusingly similar to P&G's SECRET trade dress;

(iii)     personal care products using any trade dress that is confusingly similar to P&G's RED ZONE trade dress;

(iv)     personal care products using any trade dress that is confusingly similar to P&G's HIGH ENDURANCE trade dress;

(v)     personal care products using any trade dress that is confusingly similar to P&G's PANTENE trade dress; and

16

(vi)    any other trademark or trade dress calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that defendant's business and products are in any way associated or affiliated with or related to P&G's lines of goods;

(c)    Requiring defendant to deliver up for destruction all labels, signs, prints, packaging, wrappers, and advertising or promotional materials in its possession or within its custody or control that bear any trade dress, package design, or designation in violation of P&G's rights:

(d)    Requiring defendant to account for and pay over to plaintiff defendant's profits and all damages sustained by plaintiff:

(e)    Increasing the amount of damages and/or profits awarded plaintiff as appropriate pursuant to 15 U.S.C. § 1117(a):

(f)    Awarding plaintiff reasonable attorney fees, costs, expenses, and interest pursuant to 15 U.S.C. § 1117(a) and other applicable law, including Ohio Rev. Stat. § 4165.03(A)(2)(B); and

(g)    Awarding plaintiff such other relief as the Court may deem just and proper.

JONES DAY

Dated: May 2, 2006

By _____

Kenneth R. Adamo (Ohio Bar No. 0009303)
David M. Maiorana (Ohio Bar No. 0071440)
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Peter M. Lancaster (MN#159840) (pro hac vice admission pending)
Heather D. Redmond (MN# 313233) (pro hac vice admission pending)
DORSEY & WHITNEY LLP
Suite 1500. 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

*Attorneys for Plaintiff*